UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SEMO SERVICES, INC., | ) | |
| LORI WARNER, | ) | |
| BRAD WARNER, | ) | |
| JAMIE WILLS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1:19-cv-00149-JAR |
| | ) | |
| BNSF RAILWAY CO., | ) | |
| STEVEN T. HEIDZIG, | ) | |
| ANDREW MANTHEI, | ) | |
| R.J. CORMAN RAILWAY GROUP, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Remand.  (Doc. 12.)  Defendants filed a memorandum in opposition (Doc. 23), and Plaintiffs replied (Doc. 33).

### Background

This case arises from the termination of a business relationship between Defendant BNSF Railway Co. ("BNSF") and Plaintiff SEMO Services, Inc. ("SEMO").   Plaintiffs allege the following:  For approximately nine years, SEMO was subcontracted by Defendant R.J. Corman Railway Group, LLC. ("Corman") to provide "overflow emergency work" relating to Corman's clients, including BNSF.  (Doc. 13-1 at ¶¶ 10-11.)  On August 17, 2017, BNSF's Vice President of Finance & Chief Sourcing Officer and Vice President of Compliance & Audit sent a letter to Plaintiff Brad Warner, SEMO's Vice President, and Plaintiff Jaimie Willis, SEMO's Director of Operations, that read in pertinent part:

1

> As you are aware, BNSF is investigating the receipt of fraudulent invoices as well
> as possible kickbacks by your company to BNSF employees.
>
> This letter is to inform you that BNSF is suspending any and all business
> activities with your company until the investigation is complete.

(*Id*. at 3.)  In addition, Defendant Steven T. Heidzig, a BNSF employee, sent an email with a copy of the letter attached, which "approximately 100 people in the railroad industry received and or discussed."  (*Id*. at ¶ 18.)  Thereafter, Corman cancelled all work with SEMO and has not hired them again.

BNSF conducted numerous interviews and audits of SEMO employees and documents. In an effort to assist BNSF's investigation, SEMO employees expended more than 300 man hours organizing and reviewing documents.  However, despite numerous requests, BNSF has not provided documents relating to its completed investigation into SEMO's alleged fraud.  SEMO alleges that the investigation did not produce evidence of any wrongdoing on its part and that without written confirmation from BNSF that SEMO did not submit fraudulent invoices, SEMO's ability to generate business has been significantly hampered.

On September 14, 2018, SEMO, Warner, and Willis filed suit in Missouri state court against BNSF and Heidzig, advancing claims of defamation, injurious falsehood, and tortious interference with business expectancy.  (Doc. 13-1.)  Six days later, the plaintiffs filed an amended petition, correcting a typographical error regarding SEMO's citizenship.  (Doc. 13-2.)

On October 2, 2018, before either defendant had been served, BNSF removed the suit to the Eastern District of Missouri based on diversity jurisdiction.  (Doc. 1 in *Semo Svcs. v. BNSF Ry. Co.*, No. 1:18-cv-00234-SNLJ [hereinafter "*SEMO I*"].)  Although Heidzig was a Missouri citizen, he and BNSF argued that he had been fraudulently joined to defeat diversity jurisdiction. (*SEMO I*, Doc. 16.)  SEMO, Warner, and Willis moved to remand the suit and, on May 1, 2019,

Judge Limbaugh granted the motion, finding that the plaintiffs had made a colorable claim of defamation against Heidzig and that therefore the case lacked complete diversity.  (Docs. 11, 35.)

Shortly after the case was remanded to state court, the plaintiffs moved to amend their first amended petition by interlineation (Doc. 13-9), and then moved to file a formal amended complaint on July 17, 2019 (*see* Doc. 13-11).  Plaintiffs filed their third amended petition—which is now the operative complaint before this Court—on August 5, 2019.  (Doc. 13-13.)  The third amended petition adds Plaintiff Lori Warner, sole owner and President of SEMO, as well as Corman and BNSF's Director of Strategic Sourcing Andrew Manthei as defendants.   (*Id*.) Plaintiffs' latest petition advances claims of libel/defamation, injurious falsehood, conspiracy to defame and damage reputation, tortious interference with contract and business expectancy, conspiracy to induce breach of contract and tortuously interfere with contractual relations and business expectancy, vicarious liability, and punitive damages.  (*Id*.)

On August 28, 2019, Corman removed the third amended petition to this Court, asserting diversity jurisdiction.  (Doc. 1.)  In support Corman asserts that Plaintiffs are each citizens of Missouri, that it is a citizen of Kentucky, that BNSF and Manthei are citizens of Texas, and that Heidzig is a citizen of Arizona, having moved from Missouri to Arizona on May 20, 2019, between the date the case was remanded and the date Plaintiffs filed their final motion to amend. (*Id*. at ¶¶ 12-19.)  Plaintiffs now move to remand.  (Doc. 12.)

## Legal Standard

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there."  28 U.S.C. § 1441(a); *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010) (citing *Phipps v. FDIC*, 417 F.3d 1006, 1010 (8th Cir. 2005)).  Federal district courts have original jurisdiction in civil actions between citizens of different states if the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332.  The

party invoking jurisdiction bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *Prempro*, 591 F.3d at 619 (citing *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005). "All doubts about federal jurisdiction should be resolved in favor of remand to state court." *Prempro*, 591 F.3d at 620 (citing *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007)).

## Analysis

The core dispute in this case is whether, for purposes of diversity jurisdiction, Heidzig is a citizen of Missouri (where he lived when the initial petition was filed and which would destroy diversity) or a citizen of Arizona (where he lived when the operative petition was filed and which would create complete diversity). For purposes of diversity jurisdiction, courts have long employed the time-of-filing rule, which holds that, "no matter when a challenge to subject matter jurisdiction occurs . . . the court must examine whether the jurisdictional requirements were met at the time of filing." *Fenner v. Wyeth*, 912 F. Supp. 2d 795, 800 (E.D. Mo. 2012). The issue is when the case was "filed" for purposes of jurisdiction.

Plaintiffs assert that the relevant moment is September 14, 2018, the day they filed their initial petition in state court, when Heidzig lived in Missouri. (Doc. 13.) Defendants argue that Plaintiffs' subsequent amendments replaced all prior petitions and that therefore the relevant date is August 5, 2019, when Plaintiffs filed their third amended petition—and after Heidzig had moved to Arizona. (Doc. 23.) Thus, the specific question before the Court is how to interpret "filing" when the diversity-destroying defendant changed residency between the initial complaint and the operative complaint.

Plaintiffs' remand argument is fairly simple:  a case is filed when it is initiated and courts need not retest citizenship after each and every amendment. (Doc. 13.) In support, Plaintiffs point to *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567 (2004), a case addressing

4

"whether a party's post-filing change in citizenship can cure a lack of subject-matter jurisdiction that existed at the time of filing in an action premised upon diversity of citizenship." *Id.* at 568. The case proceeded all the way to a jury verdict in favor of the plaintiff but before the judgment could be entered, the defendant moved to dismiss for lack of diversity.  *Id.* at  568-69.  The district court dismissed the case because one of the plaintiffs was a partnership with partners from Delaware, Texas, and Mexico, and a defendant was a Mexican corporation. *Id.* at 569.  On appeal, the plaintiffs argued that although complete diversity did not exist when the case was filed, the Mexican partners had left the partnership before trial, meaning the parties were diverse when the verdict was entered.  *Id.*  The Fifth Circuit agreed based on a narrow exception to the general "time-of-filing" rule for cases in which jurisdictional defects are not raised until after a verdict, when the defect had already been cured.  *Id.* at 570.  The Supreme Court rejected the Fifth Circuit's exception and reversed.  *Id.* at 582.  Justice Scalia wrote,

> To our knowledge, the Court has never approved a deviation from the rule articulated by Chief Justice Marshall in 1829 that "*[w]here there is no change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit.*"

*Id.* at 574 (quoting *Conolly v. Taylor*, 27 U.S. 556, 565 (1829) (emphasis added)).

Defendants' argument against remand begins with *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007), a case in which "the plaintiff voluntarily filed an amended complaint which deviated from the original complaint filed."  (Doc. 23 at 3.)  Once again, Justice Scalia authored the opinion.  This time, he wrote that "[t]he state of things and the originally alleged state of things are not synonymous," and that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l*, 549 U.S. at 473-74.

5

Defendants then turn to *Glazer v. Unum Life Ins. Co. of Am.*, No. 4:18CV390 JCH, 2018 WL 3421325 (E.D. Mo. July 13, 2018), in which this Court considered whether it had diversity jurisdiction after the plaintiff voluntarily amended his complaint.  Cornerstone, a local insurance broker, argued that it had been fraudulently joined to defeat diversity as evidenced by the plaintiff's failure to allege any duty to support his negligence claim against Cornerstone.  *Id.* at *1.  The plaintiff filed an amended complaint expanding on his allegations against Cornerstone, and then moved to remand.  *Id.* at *2.  The Court concluded that, because the amendment was voluntary, the Court was bound by the allegations in the amended complaint.  *Id.* at *4.  Finding that complete diversity did not exist under the amended complaint, the Court remanded.  *Id.* at *5.  Defendants also offer *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005); *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000); *Claxton v. Convergys Corp.*, No. 4:18CV205JCH, 2018 WL 1508866, at *4 (E.D. Mo. Mar. 27, 2018); and *Hinkle v. Norfolk S. Ry. Co.*, No. 4:05-CV-1867 CAS, 2006 WL 2521445, at *2 (E.D. Mo. Aug. 29, 2006), as examples of how courts have applied the rule discussed in *Rockwell Int'l* to cases involving jurisdiction and voluntary amendments.  (Doc. 23.)

Plaintiffs reply that none of Defendants' cited cases addressed the situation before this Court:  a change in citizenship by an original party after commencement but before amendment in a diversity jurisdiction case.  (Doc. 33.)  Specifically, they note that many of those cases involve federal question jurisdiction or were originally filed in federal court.  (*Id.* at 3.)  Lastly, they cite a footnote from *Rockwell Int'l*, in which Justice Scalia noted that removal cases are generally unaffected by post-removal amendments.  549 U.S. at 474 n.6.

Neither party has presented the Court with a case on all fours with the facts present here, but the Court believes *Dataflux* is most instructive.  As noted, the Supreme Court examined the long-standing time-of-filing rule, noting that, as early as *Conolly v. Taylor*, 27 U.S. 556 (1829), it

6

has held that, "[w]here there is *no* change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." *Id*. at 574 (quoting *Conolly*, 27 U.S. at 565). This Court believes that the Supreme Court's use of "commencement" answers the question presented in this case; the basic time-of-filing rule is applied when the suit began and not when the most recent amended complaint was filed.

In *Dataflux*, the Court noted that it had "never approved a deviation from [the rule as stated in *Conolly*]" except in cases where the diversity-destroying defendant was dismissed, thereby curing the defect. *Id*. at 575. This case does not implicate that exception; the diversity-destroying defendant, Heidzig, is still part of the case. As such, the ordinary rule applies, and Defendants are bound by their citizenship as it existed at the *commencement* of the case. Because Heidzig was a Missouri resident when the initial complaint was filed, this Court lacks jurisdiction and the case must be remanded.

The Court recognizes that this case is not identical to *Dataflux*. Of note, as Defendants state, *Dataflux* did not involve an amended pleading. (*See* Doc. 23 at 7.) That said, the facts of this case are distinguishable from *Rockwell Int'l* in more significant ways, such as that *Rockwell Int'l* involved federal question jurisdiction. Indeed, the fact that Justice Scalia wrote both opinions is strong evidence that the analysis is heavily fact-dependent; as such, the Court concludes that the similar jurisdictional basis is compelling. Further, the rule stated in *Dataflux*—"[w]here there is *no* change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit," 549 U.S. at 574—encompasses the facts of this case while the rule stated in *Rockwell Int'l*—"*when a plaintiff files a complaint in federal court* and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction," 549 U.S. at 473-74 (emphasis added)— does not.

7

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand (Doc. 12), is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Circuit Court of Cape Girardeau County, Missouri.

Dated this 1st day of May, 2020.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

8